## MARY B. GREGORY v. JOHN BULLOCK.

*Action on Guaranty—Guaranty—Notice of Acceptance.*

1. Notice is necessary to be given a guarantor that the person giving the credit has accepted or acted upon the guaranty, and given credit on the faith of it.

2. On the trial of an action, it appeared that the defendant wrote to plaintiff saying, "When S. is ready to cut ties, if you can agree between you as to price, no doubt I can arrange the payment of the money satisfactory to you." Thereafter plaintiff sold ties to S., but gave no notice to defendant that she had acted on the proposition contained in his letter until some months thereafter ; *Held,*

that the letter was ineffective as a guaranty to pay plaintiff for the tires.

CIVIL ACTION, to recover the value of cross ties, tried before *McIver, J.*, at July Term, 1896, of GRANVILLE Superior Court, before *McIver, J.*, and a jury.   There was a verdict against the defendants, and from a judgment thereon plaintiff defendant, Bullock, appealed.   The facts appear in the opinion of the court.

*Messrs. Edwards & Royster* and *Graham & Graham*, for plaintiffs.
*Messrs. Winston, Fuller & Biggs* and *Hicks & Hicks*, for defendant, Bullock (appellant).

FAIRCLOTH, C. J. : On December 28, 1894, the plaintiff wrote to defendant, Bullock, ''I would like to sell you some pine and oak timber and all the railroad cross ties on my children's (Stovall) land.''   On January 1, 1895, the defendant replied, ''When Mr. Smith is ready to cut ties, if you can agree between you as to price, no doubt I can arrange the payment of the money satisfactory to you.   As to old field pine, if you are willing to take the price I have been paying (50 cents per 1,000) I could put a man in it that would cut it, and it would bring you more than oak, growing so thick on an acre.   If you wish the pine cut, please answer soon.''   Defendant testified that on January 10, 1895, he received a letter from plaintiff saying ''she would sell pine at $1.25 per 1,000, and that she had decided not to sell the ties on the children's (Stovall) land.''   This letter was lost.   Plaintiff, on redirect examination, said, ''That about January 10, 1895, if she did write defendant, Bullock, a letter, it was refusing his offer.''

On January 26, 1895, the plaintiff sold to R. T. Smith ''all of the cross ties east of the dirt road   *   *   *   on

the land belonging to the children of R. O. Gregory," and Smith agreed to pay for all the ties.   On March 27, 1895, plaintiff wrote to defendant. "I sold R. T. Smith cross ties on my Cooper land, also those on my children's land near Stovall.   There is $100 due me April 1st and $100 due May 1st.   What discount will it require to let me have the two payments April 1st?"   There was no other communication between the parties.   After August 1st, 1895, plaintiff demanded of defendant payment for balance on Stovall ties.   This suit is for ties cut on Stovall land.

These letters present the question whether plaintiff and defendant entered into a contract making defendant liable for the Stovall cross ties cut by Smith.   Defendant bought some of the cross ties from Smith, and at his request made two payments to plaintiff, April 1st and May 1st, and paid the balance to Smith.   The most important element in an agreement is the consent of the parties.   There must be a meeting of two minds in one and the same intention. Otherwise, there is no agreement and therefore no contract. There must be a distinct intention, common to both parties. If there is doubt or difference, there is no agreement. Where the terms of the agreement are ascertained, its effect is determined by the law and does not depend upon the uncertain or undisclosed notions of either party.   "The construction of a contract does not depend upon what either party understood, but upon what both agreed."   *Brunhild* v. *Freeman*, 77 N. C., 128; *Pendleton* v. *Jones*, 82 N. C., 249.

In order to constitute a contract there must be a proposal and an acceptance absolute and identical with the terms of the offer, neither falling within nor going beyond the terms proposed, but closing with it as it stands.   If anything is left for future arrangement, the parties have not agreed. An acceptance, varying the terms, is a rejection of the

offer, and unles a counter proposal is accepted and its acceptance made known to the proposer, there is no contract. *Cozart* v. *Herndon*, 114 N. C., 252; Clark on Contracts, 36, 52.

Application: There is no pretence that the proposal of December 28, to sell to the defendant was accepted, but the defendant's letter of January 1 was a proposition based upon an uncertain event, of which no notice of acceptance was given. On the contrary, the letter of January 10, "that she had decided not to sell the ties on the children's (Stovall) land," was a lapse of all negotiations on the subject, and any subsequent change of mind and acceptance could not affect the question without a new and accepted proposal. Clark on Contracts, 53.

It was argued, however, that defendant's letter of January 1 was a guaranty binding him to pay the plaintiff, notwithstanding her letter of January 10. The answer is that the alleged guarantee gave no notice of its acceptance within a reasonable time. In *Adams* v. *Jones*, 12 Peters, 213, Justice Story said: "Notice is necessary to be given the guarantor that the person giving credit has accepted or acted upon the guaranty and given credit on the faith of it. This is no longer an open question in this court." The alleged guaranty was not a promise to pay money, like an endorsement, but an offer to arrange for its payment upon an uncertain event. The terms of the negotiations being ascertained by the letters, the court applies the law and finds no contract in this case. *Houck* v. *Adams*, 98 N. C., 519. This conclusion makes it unnecessary to consider the exceptions.

Error.